THE HONORABLE ROBERT S. LASNIK

1
2
3
4
5

IN THE UNITED STATES DISTRICT COURT
FOR THE WESTERN DISTRICT OF WASHINGTON
AT SEATTLE

JAMES LEE BURNS and MANDY N. BURNS, )
husband and wife, PAINLESS STEEL - )
EVERETT, LLC, a Washington corporation, and )
LACEY M. FILOSA, a single person and assignee, )
)
           Plaintiffs, )
)
     v. )
)
SCOTTSDALE INSURANCE COMPANY, a )
foreign insurance company, )
)
           Defendant. )
)
)
)
)

NO. 2:08-CV-01136-RSL

SCOTTSDALE INSURANCE COMPANY'S
MOTION FOR SUMMARY JUDGMENT

**NOTE FOR MOTION CALENDAR:
APRIL 2, 2010**

**ORAL ARGUMENT REQUESTED**

Scottsdale Insurance Company ("Scottsdale") moves for Summary Judgment in the claims

brought by Plaintiff, Lacey Filosa, as an assignee of Painless Steel Everett, LLC ("Painless Steel")

and James Lee and Mandy Burns, because the policy it issued to James Lee Burns does not cover

Ms. Filosa's claimed losses. [1]

## I.      **INTRODUCTION**

In June 2005, Ms. Filosa brought suit in the Snohomish County Superior Court, against

Painless Steel alleging that she was injured after having her tongue pierced.  (Declaration of

Jaime Allen ("Allen Decl.") Ex. 1, ¶ 3.1).  That suit ultimately was settled for $3 million and an

---

[1] Ms. Filosa moved separately for Summary Judgment on the coverage issues, but does not address her Insurance Fair Conduct Act ("IFCA") claims.  As the IFCA issues are likely moot in the absence of coverage, Scottsdale reserves this briefing for another day.

OGDEN MURPHY WALLACE, P.L.L.C.
1601 Fifth Avenue, Suite 2100
Seattle, Washington 98101-1686
Tel: 206.447.7000/Fax: 206.447.0215

1   assignment of Painless Steel and James Lee and Mandy Burns's rights in an insurance policy

2   issued by Scottsdale Insurance Co.[2]  (*Id.* ¶¶ 1.2, 4.3).  Now, as the assignee of Painless Steel and

3   the Burnses, Ms. Filosa brings the present action to collect the confessed judgment, and also

4   alleges bad faith, and violations of the Washington Administrative Code, Washington Consumer

5   Protection Act, and Washington Insurance Fair Conduct Act.  (*Id.*).

6   ## II.    MATERIAL UNDISPUTED FACTS

7   ### A.    Mr. Burns Intentionally Leaves Painless Steel Bare of Insurance.

8   The entity that is today known as Painless Steel LLC, which was originally Painless Steel

9   - Everett LLP, began leasing space in a four unit apartment building at 1807-1811 Broadway,

10  Everett, Washington ("Subject Property") on or about August 9, 2001.  (*Id.* Ex. 2).  On or about

11  November 30, 2001, Mr. Burns purchased the Subject Property in his personal capacity, leasing

12  space back to Painless Steel and several other tenants.  (*Id.* Exs. 3, 4, 5 at 28:2-4, 15-16, 19-21).

13  Although Mr. Burns and his partner discussed buying insurance for Painless Steel's

14  business operations, they determined there was "pretty much nothing that would cover [them] on

15  a professional standing that [they] could afford."  (*Id.* Ex. 5 at 26:20-24; 27:5-13).  Instead, they

16  made a "business decision" to rely upon the corporate form, leaving their partnership bare of

17  insurance.  (*Id.* at 27:17-21).

18  ### B.    Three and One-Half Years Later, Mr. Burns Purchased a "Lessor's Risk
          Only" Insurance Policy.

19
20  Scottsdale issued commercial general liability Policy No. CPS0491399 (the "Policy") to

21  James Lee Burns for the period June 9, 2005 to June 9, 2006, to provide Lessor's Risk insurance

22  coverage for himself as an "individual owner" of the Subject Property.  (Declaration of Karen

23  Dvorak ("Dvorak Decl.") ¶3-4); (Allen Decl. Ex 6).

---

24  [2] A reasonableness hearing was held on April 11, 2008.  Subsequently, Scottsdale sought to intervene.  The Superior
     Court allowed Scottsdale to intervene after ruling that Ms. Filosa knowingly misrepresented that the labret was the
25  source of her infection.  Thereafter, a second reasonableness hearing was held on September 1-2, 2009.  At the
     conclusion of the second reasonableness hearing, the court found the $3 million settlement reasonable.  Scottsdale is
26  presently appealing this determination.

{JDA770604.DOC;1\00335.001620\ }
SCOTTSDALE INSURANCE COMPANY'S MOTION FOR
SUMMARY JUDGMENT - 2

OGDEN MURPHY WALLACE, P.L.L.C.
1601 Fifth Avenue, Suite 2100
Seattle, Washington 98101-1686
Tel: 206.447.7000/Fax: 206.447.0215

1    Painless Steel was operating on the Subject Property when Mr. Burns obtained the

2    Policy. (*Id.* Ex. 5 at 28:22-25). Yet, he understood: that he was purchasing insurance to cover

3    the building he owned and himself personally (*Id.* at 31:1-6); that the operations being run in the

4    building (including Painless Steel) were not covered (*Id.* at 31:7-12); that the Policy was "just

5    separately building insurance. It [was] not for professional insurance" (*Id.* at 42:19-21); and, that

6    Painless Steel was not covered under the Policy for its piercing or tattooing services.  (*Id.* at

7    32:2-6).  Mr. Burns asked his insurance broker to obtain quotes for lessor's risk in his personal

8    capacity. (*See Id.* Ex. 7).  After procuring a quote from Scottsdale, the broker confirmed that:

9          As for what it covers, it is just the liability associated with the building as
           the Lessor's Risk and the GL associated with the rental of the 2 units as
10         well as the building itself.  It doesn't contemplate any of the operations
           you may be running from that building. (*Id.* Ex. 7).
11

12   Prior to the underlying suit, Scottsdale was never aware that Mr. Burns owned Painless Steel.

13   (Dvorak Decl. ¶ 5).

14   **C.    The Policy Insured Mr. Burns as the Owner of the Property.**

15         1.    The Policy repeatedly identifies Mr. Burns as an individual.

16   Mr. Burns is the only Named Insured on the Policy. (*Id.* Ex 6 at 00006).  Painless Steel is

17   not named as an insured or additional insured.  (*Id.*).  Throughout the Policy, Mr. Burns is

18   identified as an individual - he lists himself on the declarations page as "an individual" (*Id.* at

19   00012) and the Policy declarations describes his business as a "property owner." (*Id.* at 00006).

20         2.    Mr. Burns did not insure Painless Steel.

21   Mr. Burns is an experienced businessman with an ownership interest in multiple tattoo

22   and piercing companies. (*Id.* Ex. 5 at 11:22-23; 12:20-25; 22:20-23).  He also owns property in

23   his personal capacity.  (*Id.* at 28:2-4).  Mr. Burns intentionally limited his liability by separating

24   his personal and corporate property.  (*Id.* at 22:3-13 (testifying that he incorporated Painless

25   Steel "to protect [his] personal property")).  He executed a Member Operating Agreement, and

26   kept records of Painless Steel's regular member meetings. (*Id.* Exs. 8, 9).  Mr. Burns even had

{JDA770604.DOC;1\00335.001620\ }
SCOTTSDALE INSURANCE COMPANY'S MOTION FOR
SUMMARY JUDGMENT - 3

OGDEN MURPHY WALLACE, P.L.L.C.
1601 Fifth Avenue, Suite 2100
Seattle, Washington 98101-1686
Tel: 206.447.7000/Fax: 206.447.0215

1   Painless Steel lease space from him in his personal capacity. (*Id.* Ex. 4). According to the lease,

2   "[t]he Landlord will not provide any insurance coverage for Tenant." (*Id.*). Further, the Lease

3   recommends that Painless Steel obtain "[c]omprehensive general liability insurance against

4   claims for bodily injury, including death, and property damage or loss arising <u>out of the use or</u>

5   <u>occupation of the Premises, or the Tenant's business on or about the Premises.</u>" (*Id.*) (emphasis

6   added). Mr. Burns knew that Scottsdale would not cover any losses arising out of the operations

7   of the tattooing and piercing business. (*Id.* Ex. 5 at 32:22-33:3). In contrast, the Lease required

8   Mr. Burns, as the landlord, to keep the buildings insured against any loss by fire or other hazards.

9   (*Id.* Ex. 4). He obtained the Policy for that purpose. (*Id.* Ex. 5 at 76:20-77:7). Thus, in the event

10  of a large claim against one of his businesses, the worst thing that would happen is that that

11  specific location would turn over its keys. (*Id.* at 22:8-13). Mr. Burns agreed that Scottsdale did

12  not insure Painless Steel. (*Id.* at 32:2-6, 22-33:3).

13                    3.    The Policy Declarations describe Mr. Burns as a property owner.

14          The Policy Declarations describe Mr. Burns as a "property owner." (*Id.* Ex. 6 at 00006).

15  Nowhere in the Policy is a tattoo or piercing business mentioned. (*See id.* Ex. 6). Further, the

16  Supplemental Declarations to the Policy identify the form of business as an "individual." (*Id.* at

17  00012). The class descriptions are for "APARTMENT BUILDINGS" and "BUILDINGS OR

18  PREMISES - BANK AND OFFICE MERCANTILE OR MANUFACTURING (LESSOR'S

19  RISK ONLY)." (*Id.* at 00013).

20                    4.    The Policy does not insure the Burnses with respect to Painless Steel.

21          Section II "Who is an Insured" of the Policy provides that "if you are designated in the

22  Declarations as…an individual, you and your spouse are insureds, but only with respect to the

23  conduct of a business of which you are the sole owner." (*Id.* Ex. 6 at 00021). However, this

24  section is modified so that, "[n]o person or organization is an insured with respect to the conduct

25  of any…limited liability company that is not shown as a Named Insured in the Declarations."

26  (*Id.* at 00022).

**D.      Lacey Filosa Brought Suit Against Painless Steel in June 2007.**

On March 11, 2006, Lacey Filosa went to Painless Steel to have her tongue pierced.  (*Id.* Ex. 12 at ¶2).  Ms. Filosa had six other piercings and decided to get her tongue pierced because she "thought it was cool."  (*Id.* Ex. 10 at 9:14-16;11:5-7; 13:16-18).  Upon her arrival at Painless Steel, she completed an intake form acknowledging receipt of verbal and written "pre-service information" and agreed to hold harmless Painless Steel and Taylor Doose, the piercer who performed her piercing.  (*Id.* Ex. 11).  After Ms. Filosa signed the Hold Harmless Agreement, Mr. Doose inserted a metal barbell or "labret" into her tongue.  (*Id.* Ex. 10 at 26:15-27:25).  A few days later, she returned for the insertion of a shorter labret.  (Id. Ex. 12, ¶ 6).  The Burnses had no personal involvement in Ms. Filosa's services, and were not present at Painless Steel on either date.  (*Id.* Ex. 5 at 44:24-45:5; Ex. 13  at 11:18-20).

On March 24, 2006 or March 25, 2006, Ms. Filosa began having "tooth pains."  (*Id.* Ex. 10 at 44:6; Ex. 16).  She visited two dentist and then went to the Emergency Room where she became very ill.  (*Id.* Ex. 15, ¶2.3-2.4).  Her treating physician, James Erhardt, M.D., concluded that bacteria in her own saliva washed through the hole in her tongue, causing the infection.  (*Id.* Ex. 14 at 22:21-25).  On June 15, 2007, Ms. Filosa, brought the underlying suit in the Snohomish County Superior Court, against Painless Steel and "John Does" (employees of Painless Steel, LLC [sic]) alleging damages "as a result of the surgical procedure to insert a tongue ring at Painless Steel LLC [sic]."  *(Id.* Ex. 15).

**E.      The Burnses Repeatedly Informed Ms. Filosa During the Underlying Case that the Policy did not Cover Painless Steel's Business Operations.**

Mr. Burns wrote to Ms. Filosa's counsel that "the company did not buy insurance."  (*Id.* Ex. 16).  Mr. Burns denied any coverage in his discovery responses.  (*Id.* Ex. 5 at 38:19-39:6; Ex. 17 (stating in interrogatory responses that "Painless Steel - Everett, LLC does not have a liability insurance policy."); Ex. 18 (denying Ms. Filosa's RFA stating that "Defendant carried liability insurance for its premises at Painless Steel Tattooing & Body piercing at 1809 Broadway, Everett, WA 98201 on March 11, 2006").  And, Mr. Burns testified as Painless

{JDA770604.DOC;1\00335.001620\ }
SCOTTSDALE INSURANCE COMPANY'S MOTION FOR
SUMMARY JUDGMENT - 5

OGDEN MURPHY WALLACE, P.L.L.C.
1601 Fifth Avenue, Suite 2100
Seattle, Washington 98101-1686
Tel: 206.447.7000/Fax: 206.447.0215

1   Steel's 30(b)(6) witness, in this case, that he stood by his interrogatory response. (*Id.* Ex. 5 at

2   38:19-39:6). Mr. Burns also explained to Ms. Filosa's attorney, that "[a]lthough we do not think

3   this was caused by the company, please note that the company did not buy any insurance." (*Id.*

4   Ex. 16). Mr. Burns's counsel doubted Ms. Filosa would "take on Scottsdale as its position that it

5   owes no duty to defend this lawsuit is pretty sound." (*Id.* Ex. 19).

6         F.    **Ms. Filosa's Amended Complaint Added the Burnses "in their capacity as the sole owners of Painless Steel Everett LLC, not as individuals subject to**

7                **personal liability."**

8         In October 2007, Ms. Filosa amended her Complaint to add the Burnses, not in their

9   personal capacities, but as sole owners of Painless Steel. In her motion to amend, she disavowed

10  any intent to pursue their personal assets: "Painless Steel Everett LLC purposely operates bare of

11  any insurance, so there is no liability insurance coverage for the business…[t]herefore, I have

12  added James Lee Burns and his spouse in their capacity as the sole owners of Painless Steel

13  Everett LLC, not as individuals subject to personal liability." (*Id.* Ex.20 at 2-3 (emphasis

14  added); Ex. 21 at ¶ 3). The Second Amended Complaint was filed and added the Burnses "as

15  sole owners of Painless Steel Everett LLC." (*Id.* Ex. 23 at ¶ 1.3).

16        G.    **Scottsdale Timely Responded to Each of its Insured's Tenders.**

17        Scottsdale timely responded to the tenders made by the Burnses and Painless Steel's

18  private counsel, Dylan Jackson. (Dvorak Decl. Exs. 1-4).

19        1.    Scottsdale responded to Mr. Jackson's First Demand within 13 days.

20        On June 28, 2007, Mr. Jackson tendered to Scottsdale, forwarding the Complaint and

21  Ms. Filosa's demand for policy limits. (*Id.* Exs. ¶5-6). Scottsdale received the documents on

22  June 29, 2007. (*Id.* Ex. 1). By letter dated July 5, 2007, and sent on July 11, 2007, Scottsdale

23  denied coverage because the Policy did not insure Painless Steel. (*Id.* Ex. 3).

24        2.    Scottsdale responded to Mr. Jackson's Second Tender within 15 days.

25        On July 9, 2007, Ms. Filosa filed an Amended Complaint naming as Painless Steel and

26  "John Does" (agents or employees of Painless Steel - Everett LLC) and correcting the

{JDA770604.DOC;1\00335.001620\ }
SCOTTSDALE INSURANCE COMPANY'S MOTION FOR
SUMMARY JUDGMENT - 6

OGDEN MURPHY WALLACE, P.L.L.C.
1601 Fifth Avenue, Suite 2100
Seattle, Washington 98101-1686
Tel: 206.447.7000/Fax: 206.447.0215

1   misspelling of "Painless Steel." (Allen Decl. Ex. 22). That Complaint did not allege claims

2   against, or name, the Burnses. (*Id.*). On August 28, 2007, Mr. Jackson re-tendered the claim to

3   Scottsdale based on the Amended Complaint. (Dvorak Decl. Ex. 4). On September 12, 2007,

4   Scottsdale again denied the claim, stating that its coverage position remained unchanged. (*Id.*

5   Ex. 5).

6          3.      Scottsdale responded to Mr. Jackson's Third Tender within 1 day.

7   On October 1, 2007, Ms. Filosa moved to file a Second Amended Complaint adding,

8   *inter alia*, "James Lee Burns and his spouse, Mandy N. Burns, as sole owners of Painless Steel -

9   Everett LLC." (Allen Decl. Ex. 23 at ¶ 1.3). Mr. Jackson re-tendered to Scottsdale. (Dvorak

10  Decl. Ex. 6). On October 2, 2007 Scottsdale responded that its coverage position remained

11  unchanged. (*Id.* Ex. 7).

12         4.      Scottsdale responded to Mr. Jackson's Fourth Tender within 7 days.

13  When the Court granted Ms. Filosa's motion to amend her Complaint on October 11,

14  2007, Mr. Jackson re-tendered the claim to Scottsdale by letter dated the same day. (*Id.* Ex. 8).

15  The letter was received on October 16, 2007. (*Id.*). On October 23, 2007, Scottsdale again

16  denied the claim because the Policy expressly provided that "no person is an insured with respect

17  to the conduct of any. . . limited liability company that is not shown as a Named Insured in the

18  Declarations." (*Id.* Ex. 9).[3] Scottsdale later reiterated its denial in a letter sent to Mr. Jackson on

19  December 7, 2007. (*Id.* Ex. 12).

20         **III.    ISSUES PRESENTED**

21         1.      Does Scottsdale owe a duty to defend and/or indemnify where the Policy did not

22  provide coverage and clearly excluded Ms. Filosa's claims?

23         2.      Did Scottsdale act in good faith by timely denying its insured's tender for defense

24

---

25  [3] Scottsdale also responded timely to a policy limits demand from Ms. Filosa's counsel, dated October 26, 2007.
    (Dvorak Decl. Ex. 10). Scottsdale referred this matter to its coverage counsel and responded denying Ms. Filosa's

26  demand on December 7, 2007 and reiterating its coverage position. (*Id.* Ex. 11).

{JDA770604.DOC;1\00335.001620\ }
SCOTTSDALE INSURANCE COMPANY'S MOTION FOR
SUMMARY JUDGMENT - 7

OGDEN MURPHY WALLACE, P.L.L.C.
1601 Fifth Avenue, Suite 2100
Seattle, Washington 98101-1686
Tel: 206.447.7000/Fax: 206.447.0215

and indemnity, when its Policy did not provide coverage and clearly excluded Ms. Filosa's claims?

      3.     Did Scottsdale follow the Consumer Protection Act by denying coverage when its Policy did not provide coverage and clearly excluded Ms. Filosa's claims?

## IV.   **EVIDENCE RELIED UPON**

1.     Declaration of Jaime Allen with attached Exhibits 1 - 26;

2.     Declaration of Karen Dvorak with attached Exhibits 1-12.

2.     The statements, materials and pleadings on file with the Court, and all exhibits attached hereto.

## V.   **ARGUMENTS AND AUTHORITY**

The "interpretation of language in an insurance policy is a matter of law" for the Court to decide. *Allstate Ins. Co. v. Peasley*, 131 Wn.2d 420, 424, 932 P.2d 1244 (1997). When, as here, the material facts are not disputed, summary judgment is appropriate. *See McDonald v. State Farm Fire & Casualty Co.*, 119 Wn.2d 724, 730-31 837 P.2d 1000, 1003 (1992).

### A.   **Scottsdale has no Duty to Defend, Because the Policy did not Cover Ms. Filosa's Claims.**

Mr. Burns did not buy an insurance policy to cover Painless Steel or its operations, and the Policy should not now be interpreted to have a meaning that it was not intended or understood to have when it was created. "[T]he duty to defend hinges not on the insured's potential liability to the claimant, but rather on whether the complaint contains any factual allegations rendering the insurer liable to the insured under the policy." *State Farm Gen. Ins. Co. v. Emerson*, 102 Wn.2d 477, 486, 687 P.2d 1139 (1984). "When coverage is clearly inapplicable to the facts alleged in the complaint, the insurer has no duty to defend." *Id.* Ms. Filosa's Second Amended Complaint alleges facts and events outside the scope and intent of the Policy - Painless Steel is not insured, the Burnses are not insured as to Painless Steel's

{JDA770604.DOC;1\00335.001620\ }
SCOTTSDALE INSURANCE COMPANY'S MOTION FOR
SUMMARY JUDGMENT - 8

OGDEN MURPHY WALLACE, P.L.L.C.
1601 Fifth Avenue, Suite 2100
Seattle, Washington 98101-1686
Tel: 206.447.7000/Fax: 206.447.0215

1  operations, and the Policy excludes allegations under the bacteria/fungi and professional services

2  exclusions.

3            1.    Ms. Filosa, as an assignee of Painless Steel and the Burnses, cannot meet

4                 either prong of the *McDonald* test to establish coverage.

5         An insurance policy is construed as a contract. *Weyerhaeuser Co. v. Commercial Union*

6  *Ins. Co.,* 142 Wn.2d 654, 665, 15 P.3d 115 (2000). It is considered as a whole and given a "fair,

7  reasonable, and sensible construction as would be given to the contract by the average person

8  purchasing insurance." *Id.* at 666. When the policy language is clear and unambiguous, it is

9  enforced as written and courts cannot modify or create an ambiguity where none exists.

10  *Quadrant Corp. v. Am. States Ins.,* 154 Wn.2d 165, 171, 110 P.3d 733 (2005). The Policy

11  clearly and unambiguously excludes coverage for Ms. Filosa's allegations.

12         To determine whether there is coverage under a commercial general liability policy,

13  Washington courts use a two-step process - *first,* the insured must show that its loss falls within

14  the scope of the losses insured under the policy; and, then only after this showing is made;

15  *second,* the insurer must show that the loss is excluded by specific policy language to avoid

16  coverage. *McDonald v. State Farm Fire & Cas. Co.,* 119 Wn.2d 724, 731, 837 P.2d 1000

17  (1992). Under the first step, the insured must establish who is insured, the type of risk insured

18  against, and the existence of the insurance contract. *Olivine Corp. v. United Capitol Ins. Co.,*

19  147 Wn.2d 148, 164, 52 P.2d 494 (2002). "[E]stablishing that a policy is in effect is not the

20  same as establishing there is coverage." *Id.* The Policy does not meet either prong of this test.

21            a.    Ms. Filosa cannot establish coverage.

22         The Policy issued to James Lee Burns, as a landlord of a four unit apartment building, did

23  not provide coverage for the operations of Painless Steel, one of the building's tenants. "CGL

24  policy holders like [plaintiff] have purchased a general liability policy, not a performance bond,

25  product liability, or malpractice insurance." *Hayden v. Mutual of Enumclaw Ins. Co.,* 141 Wn.2d

26  55, 64, 1 P.3d 1167 (2000) (internal quotations and citations omitted). "[A]s a private contractor,

{JDA770604.DOC;1\00335.001620\ }
SCOTTSDALE INSURANCE COMPANY'S MOTION FOR
SUMMARY JUDGMENT - 9

OGDEN MURPHY WALLACE, P.L.L.C.
1601 Fifth Avenue, Suite 2100
Seattle, Washington 98101-1686
Tel: 206.447.7000/Fax: 206.447.0215

1  the insurer may place limitations on certain policy provisions without violating a statute or public

2  policy." *Smith v. Cont'l Cas. Co.*, 128 Wn.2d 73, 83, 904 P.2d 749 (1995).  Inherently, "[a]n

3  insurer is free to limit its risks by excluding coverage when the nature of its risk is altered by

4  factors not contemplated by it in computing premiums." *Id.*

5          *(1)  Painless Steel and the Burnses "in their sole capacity as*
6               *owners of Painless Steel" are not insureds under the*
               *Policy.*

7  Plaintiff cannot meet the first part of the *McDonald* test because Painless Steel is not an

8  "insured" under the Policy and the Burnses are not insureds with regards to the conduct of

9  Painless Steel.  Section II of the Policy identifies "Who is an Insured."  (Allen Decl. Ex. 6 at

10 00021).

11      **SECTION II -- WHO IS AN INSURED**
12      1. If you are designated in the Declarations as:
13          a. An individual, you and your spouse are insur-
              eds, but only with respect to the conduct of a
              business of which you are the sole owner.
14          b. A partnership or joint venture, you are an in-
15             sured. Your members, your partners, and their
              spouses are also insureds, but only with re-
16             spect to the conduct of your business.
17          c. A limited liability company, you are an insured.
              Your members are also insureds, but only with
18             respect to the conduct of your business. Your
              managers are insureds, but only with respect to
              their duties as your managers.
19
20 Section II of the Policy continues,

20      3. ~~Any organization you newly acquire or form, other~~
21      ~~than a partnership, joint venture or limited liability~~
        ~~company, and over which you maintain ownership~~
22      ~~or majority interest, will qualify as a Named Insured~~
        ~~if there is no other similar insurance available to~~
23      ~~that organization. However:~~
24          ~~a. Coverage under this provision is afforded only~~
              ~~until the 90th day after you acquire or form the~~
              ~~organization or the end of the policy period,~~
25             ~~whichever is earlier;~~

26

{JDA770604.DOC;1\00335.001620\ }
SCOTTSDALE INSURANCE COMPANY'S MOTION FOR
SUMMARY JUDGMENT - 10

OGDEN MURPHY WALLACE, P.L.L.C.
1601 Fifth Avenue, Suite 2100
Seattle, Washington 98101-1686
Tel: 206.447.7000/Fax: 206.447.0215

1

~~b. Coverage A does not apply to "bodily injury" or "property damage" that occurred before you acquired or formed the organization; and~~

2

~~c. Coverage B does not apply to "personal and advertising injury" arising out of an offense committed before you acquired or formed the organization.~~

3

4

No person or organization is an insured with respect to the conduct of any current or past partnership, joint venture or limited liability company that is not shown as a Named Insured in the Declarations.

5

6

7

(Allen Decl. Ex. 6 at 00022) (strike out added per Exclusion - New Entities, *Id.* at 00031).

8

   The Policy Declarations unambiguously identified the insured as "Lee Burns." (*Id.* at

9

00012). Under the "who is an insured" definition, and before reading the Policy any further, Mr.

10

Burns and Mrs. Burns would be insured with respect to the conduct of a business of which Mr.

11

Burns is the sole owner. (*Id.* at 00021). However, Section II is modified by the last paragraph in

12

the section stating that "[n]o person or organization is an insured with respect to the conduct of

13

any current or past partnership, joint venture, or limited liability company that is not shown as a

14

Named Insured in the Declarations." (*Id.* at 00022).   In Ms. Filosa's Second Amended

15

Complaint, she specifically added the Burnses "in their capacity as the sole owners of Painless

16

Steel…not as individuals subject to personal liability." (*Id.* Ex. 23 at ¶ 1.3).  Thus, the Burnses

17

are not insured "with respect to the conduct" of Painless Steel, because Painless Steel is not

18

shown as a named insured in the declarations and because the Burnses were named in the suit

19

only under their capacity as owners in Painless Steel.

20

   Ms. Filosa has argued that the conduct of a limited liability company is not excluded

21

because that paragraph modifies only Section II(3), directly above it which is deleted by the New

22

Entities Endorsement. (*Id.* Ex. 6 at 00031).  But, a plain reading of Section II, including looking

23

at the placement of text throughout the section and the margins, makes it unarguably clear that

24

25

26

1   the last paragraph of Section II modifies the entire section.  Thus, the "No person…" paragraph

2   applies to all of Section II, not just to the paragraph 3.[4]

3               (2)   *Painless Steel's operations were not the "type of risk to be*
                      *insured."*

4

5   Ms. Filosa also fails to meet the first prong of the *McDonald* test because Painless Steel's

6   operations were not the "type of risk to be insured."  The Policy was issued to Lee Burns as an

7   individual with the type of risk being insured described in the business description as a "Property

8   Owner."  (Allen Decl. Ex. 6 at 00006).   The property being insured was "APARTMENT

9   BUILDINGS" and "BUILDINGS OR PREMISES - BANK AND OFFICE MERCANTILE OR

10   MANUFACTURING (LESSOR'S RISK ONLY)." (*Id.* at 00013).  The Policy does not mention

11   Painless Steel, any piercing or tattoo parlor, or any business operations of Mr. Burns's aside from

12   him owning the Subject Property.  The description limits the buildings or premises to "lessor's

13   risk only," making it clear that the insurance was not covering the operations of the businesses

14   occupying the building.  (*Id.*).   Further confirming that the Policy covers only Mr. Burns as

15   landlord, is the exclusionary language discussed above providing that "[n]o person or

16   organization is an insured with respect to conduct of any current or past partnership, joint venture

17   or limited liability company that is not shown as a Named Insured in the Declaration" (*Id.* at

18   00022).  Upon accepting the Policy, Mr. Burns agreed that the statements in the Declarations

19   were accurate, based on representations made by him to the insurance company, and that

20   Scottsdale had relied on those representations in issuing the Policy.  (*Id.* Ex. 6 at 00006).

21   Scottsdale cannot now be held to provide coverage where none exists under the plain language of

22   the Policy.

23   ———————————————

24   [4] Throughout the Policy, the placement of the text in other sections shows that it is the placement of the text that is
     determinative of what the text applies to, for example, the introductory language of the Policy beginning with

25   "[v]arious provisions in this policy restrict coverage…" is set to the side, in line with all the Section headings, as it
     applies to the entire Policy. (Allen Decl. Ex. 6 at 00014).  Conversely, when the Policy intends for a paragraph to

26   apply only to the section preceding it, that paragraph is in line with the section to which it applies, for example, the
     paragraph following Section I(1)(a)(2) applies to all of Section I(1).  (*Id.*).

{JDA770604.DOC;1\00335.001620\ }
SCOTTSDALE INSURANCE COMPANY'S MOTION FOR
SUMMARY JUDGMENT - 12

OGDEN MURPHY WALLACE, P.L.L.C.
1601 Fifth Avenue, Suite 2100
Seattle, Washington 98101-1686
Tel: 206.447.7000/Fax: 206.447.0215

b.   Mr. Burns and Scottsdale never intended to insure Painless Steel or its operations.

In addition to the actual language of the Policy, voluminous evidence supports that Mr. Burns and Scottsdale never intended to bind coverage for Painless Steel's operations. Washington courts have repeatedly recognized that the primary goal of construing an insurance policy is to give effect to the parties' intent. *See e.g., Weyerhaeuser*, 142 Wn.2d at 669 ("primary goal is to discern the intent of the parties and such intent must be discovered from viewing the contract as a whole."). Courts attempt to ascertain what was probably contemplated by the parties when the contract was written. *Harris v. Fireman's Fund Indem. Co.*, 42 Wn.2d 655, 664, 257 P.2d 221 (1953). Accordingly, in determining whether an insurance contract applies to a given loss, a court evaluates whether the parties *intended* that contract would apply. *See Aetna Inc. Co. v. Kent*, 85 Wn.2d 942, 946, 540 P.2d 1383 (1975) ("[t]he intention of the parties…must control concerning the coverage provided."). The parties' intent is determined at the time they entered the contract, not the interpretations advocated by the parties years later, after a claim is made and litigation commenced. *See e.g. Lynott v. Nat'l Union Fire Ins. Co.*, 123 Wn.2d 678, 689, 871 P.2d 251 (1987). The undisputed facts show that Mr. Burns and Scottsdale did not intend to cover Painless Steel. *See* § V(A)(1) *supra.*

In similar situations, where a policy only covered certain aspects of a business or certain operations, courts have held that no coverage existed. In *Nat'l Union Fire Ins. Co. of Pittsburgh, Penn. v. Northwest Youth Svcs.*, 97 Wn. App. 226, 232, 983 P.2d 1144 (1999), when a general liability policy covered the named insured and its employees in the scope of their work, the court held that it was reasonable to conclude that the parties did not intend to cover claims arising out of sexual misconduct of a therapist "since such malpractice claims represent a significant and identifiable risk to the insurer." Similarly here, the Policy covered only the physical buildings on the Subject Property, and not the operations occurring inside them because that would have been a significant and identifiable risk to Scottsdale for which it would have either chosen not to issue the Policy or charged much higher premiums.

{JDA770604.DOC;1\00335.001620\ }
SCOTTSDALE INSURANCE COMPANY'S MOTION FOR
SUMMARY JUDGMENT - 13

OGDEN MURPHY WALLACE, P.L.L.C.
1601 Fifth Avenue, Suite 2100
Seattle, Washington 98101-1686
Tel: 206.447.7000/Fax: 206.447.0215

1     Also, the Washington Court of Appeals held in *Unigard*, 97 Wn. App. 417, 983 P.2d

2     1155 (1999), that there was no coverage for an individual when a lawsuit named only a company

3     and not the individual.   The court reasoned that the complaint against the company, "even if

4     construed liberally, does not trigger [the insurer's] duty to investigate a potential personal claim

5     against [the individual]." *Unigard v. Leven*, 97 Wn. App. at 425.  In this case, none of the parties

6     against whom Ms. Filosa brings suit are covered under the Policy.  Even if construed liberally,

7     there is no coverage for Painless Steel because it is not an insured, and there is similarly no

8     coverage for the Burnses in their capacity "as sole owners" of Painless Steel because the Policy

9     language specifically excludes coverage for individual insureds "with respect to the conduct of

10    any...limited liability company that is not shown as a Named Insured in the Declarations."

11    (Allen Decl. Ex. 6 at 00022).

12                    *(1)      Mr. Burns purposefully did not insure Painless Steel.*

13    Scottsdale limited its risk by not insuring Painless Steel or its operations.   Mr. Burns

14    admits that Painless Steel was never an insured of Scottsdale.  (*Id.* Ex. 5 at 32:3-6, 22-3).[5]  In

15    fact, Mr. Burns purposefully chose not to insure Painless Steel because "pretty much nothing that

16    would cover [them] on a professional standing that [they] could afford."  (*Id.* at 26:20-27:13).

17    He made a "business decision" to rely upon Painless Steel's corporate form, leaving it bare of

18    insurance, and instead relying "on the limited liability of the company as opposed to relying on

19    insurance to protect the business."  (*Id.* at 27:17-21; *see also* Ex. 20 at 2)  ("Painless Steel

20    Everett LLC purposefully operates bare of any insurance, so there is no other liability insurance

21    coverage available for the business.").   Painless Steel was operating intentionally bare of

22    insurance. (*See id.*).  Approximately one month after obtaining the Policy for building insurance,

23

24    [5]         Q:      And we discussed earlier that Painless Steel - Everett, LLC was never an insured of Scottsdale
                          Insurance Company --
25             MR. MOORE:  Object to the form.
                   Q:      -- is that correct?
26             A:          That's correct.
                   (Allen Decl. Ex. 5 at 65:22-66:2).

OGDEN MURPHY WALLACE, P.L.L.C.
1601 Fifth Avenue, Suite 2100
Seattle, Washington 98101-1686
Tel: 206.447.7000/Fax: 206.447.0215

1  and knowing that Painless Steel was not insured under the Policy, Mr. Burns incorporated

2  Painless Steel as a limited liability company "to protect [his] personal property." (*Id.* Ex. 5 at

3  22:3-13).

### (2)     Mr. Burns purchased a Lessor's Risk Policy to cover the Subject Property.

Mr. Burns purchased a Lessor's Risk policy to cover the Subject Property from

Scottsdale, not a policy to cover Painless Steel or its operations. (*Id.* Ex. 5 at 32:2-6, 22-33:3).

Mr. Burns is the only named insured on the Policy and is identified as an individual throughout

the Policy. (Allen Decl. Ex. 6 at 00006). The Policy is issued to Mr. Burns as the owner/lessor

of the apartment and commercial rentals. (*Id.* at 00013). Mr. Burns is an experienced

businessman who intentionally separated his personal and business property so that if there was a

large claim against one of his businesses, then, "the worst thing that would happen is that that

location would need to basically turn over the keys." (*Id.* Ex. 5 at 22:3-13). Mr. Burns

understood the decision he was making:

> Q:     Did you understand in receiving this quote that the insurance that you would be purchasing would cover your building and you in your personal capacity only?
> MR. JACKSON:  Object to the form.
> A:     Yes.
> Q:     Did you understand in receiving this quote that the insurance that you would be purchasing if you went ahead and bought this would not cover operations being run on the building?
> MR. MOORE:  Object to the form.
> A:     Yes.
> Q:     And at the time that you received this quote, Painless Steel - Everett, LLP was running operations from the building?
> A:     Yes.
> Q:     And with this letter you would understand that if Painless Steel - Everett, LLP would have had a mishap and been sued that you would not be able to look to the insurance policy that was going to be provided by this quote to cover Painless Steel - Everett, LLP?
> MR. MOORE:  Object to the form.
> MR. JACKSON:  Object to the form.
> A:     <u>Yes, in the capacity of tattooing or piercing itself.</u>
> Q:     <u>So you understood that the insurance policy that you were contemplating buying at that moment would not cover tattooing or piercing, correct?</u>

MR. MOORE:  Object to the form.
A:        Right.  Just the building.
(*Id.* Ex. 5 at 31:132:6) (emphasis added).

Furthermore, the broker who Mr. Burns worked with to obtain the Policy, explained that it covered "just the liability associated with the building as the Lessor's Risk and the GL associated with the rental of the 2 units as well as the building itself.  It doesn't contemplate any of the operations you may being run from that building."  (*Id.* Ex. 7).  Mr. Burns confirmed that he understood that the Policy was "just separately building insurance" and "not for professional insurance."  (*Id.* Ex. 5 at 42:19-21).

### 2.  **Even if Mr. Burns is covered under the Policy, specific Policy language excludes his claims.**

Where, as here, the policy exclusion clearly and unambiguously applies to bar coverage, the court's inquiry ends.  *Scottsdale Ins. Co. v. Int'l Protective Agency*, 105 Wn. App. 244, 249, 19 P.3d 1058 (2001).  Ms. Filosa, as an assignee of Painless Steel and the Burnses, fails to satisfy the first step of the *McDonald* test, because the alleged loss does not fall within the scope of losses insured under the Policy.  Regardless, under the second *McDonald* factor, Ms. Filosa's alleged losses are excluded from the Policy.

### a.  The Fungi/Bacteria Exclusion excludes Ms. Filosa's claims.

The Policy does not apply to bodily injury "which would not have occurred, in whole or in part, but for the actual, alleged or threatened inhalation of, ingestion of, contact with, exposure to, existence of, or presence of, any 'fungi' or bacteria on or within a building or structure, including its contents…"  (Allen Decl. Ex. 6 at 00049, 00050).  Ms. Filosa alleges, in her Second Amended Complaint, that she contracted "flesh eating bacteria" from a contaminated labret (barbell) used to pierce her tongue.  (*Id.* Ex. 23 ¶ 2.4).  The plain language of the Policy excludes her claim as it alleges that a deadly bacteria, that was within Painless Steel's building or on the contents therein, contaminated the barbell.

{JDA770604.DOC;1\00335.001620\ }
SCOTTSDALE INSURANCE COMPANY'S MOTION FOR
SUMMARY JUDGMENT - 16

OGDEN MURPHY WALLACE, P.L.L.C.
1601 Fifth Avenue, Suite 2100
Seattle, Washington 98101-1686
Tel: 206.447.7000/Fax: 206.447.0215

1    Ms. Filosa argues that the labret was a good or product intended for "consumption," and

2    thus falls under the exclusion's exception that "[t]his exclusion does not apply to any 'fungi' or

3    bacteria that are, are on, or are contained in, a good or product intended for consumption." (*Id.*

4    Ex. 6 at 00050).    However, a labret is not a good or product intended for *consumption*.

5    According to accepted dictionary definitions, "consumption" can mean either: (1) a progressive

6    wasting away of the body especially from pulmonary tuberculosis; (2) the act or process of

7    consuming; or, (3) the utilization of economic goods in the satisfaction of wants or in the process

8    of production resulting chiefly in their destruction, deterioration, or transformation. *Webster's*

9    *Third New International Dictionary, Unabridged,* http://www.merriam-webster.com/dictionary/

10   consumption.   Neither of the three definitions apply to the present situation.   A federal court in

11   Georgia held that water in a hot tub is a good or product intended for consumption because it met

12   the   third   definition   and   was   intended   for   the   "utilization…in   the   satisfaction   of   wants."

13   *Nationwide Mutual Fire Ins. Co. v. Dillard House, Inc.*, 651 F.Supp.2d 1367 (N.D. Ga. 2009).

14   However, *Dillard House*, is entirely distinguishable from the present suit because water in a hot

15   tub is expected to be consumed.   Quite simply, the water is flushed out after use.   In other words

16   it   is   used   and   then   disposed   of   afterwards.     Therefore,   it   is   destroyed,   deteriorates,   or   is

17   transformed.   Here, the labret is never consumed, it never changes form, and it is never digested

18   or ingested by the body - in short, it is never meant for consumption.   Additionally, undefined

19   terms are given "their plain, ordinary, and popular meaning as would be understood by the

20   average insurance purchaser." *Wheeler v. Rocky Mtn. Fire & Cas. Co.*, 124 Wn. App. 868, 872,

21   103 P.3d 240 (2004).   It strains common usage and language to assert that a labret is intended for

22   "consumption," under the Policy.   Thus, the exception to the exclusion does not apply and the

23   fungi/bacteria exclusion precludes coverage under the Policy.

24

25

26

b.   <u>Ms. Filosa's claims were excluded under the Professional Services Exclusion.</u>

1

2   Ms. Filosa's piercing is a "professional service" excluded under the Professional Services

3   Exclusion in the Policy.  *See Hollingsworth v. Commercial Union Insurance*, 208 Cal.App.3d

4   800, 256 Cal. Rptr. 357 (Cal. App. 1989).  The Professional Services Exclusion provides that

5   "[t]his insurance does not apply to 'bodily injury'…due to the rendering of…any professional

6   service." (Allen Decl. Ex.6 at 00030).  The exclusion for the Policy specifically excludes "<u>any</u>

7   and <u>all</u> professional exposures." (*Id.*) (emphasis added).

8   In *Hollingsworth*, a California case that is directly on point and with facts strikingly

9   similar to the present case, a cosmetic store tendered its defense to its business insurer when a

10   customer sued it and its owner for damages allegedly caused by the store's employee negligently

11   piercing the customer's ear.  *Hollingsworth v. Commercial Union Ins.*, 208 Cal.App.3d 800, 256

12   Cal. Rptr. 357 (1989).  When the insurer denied coverage under the policy's professional

13   services exclusion, the store filed suit arguing that ear piercing was not a professional service

14   because it required no special training or skill.  *Id.* at 803, 807.  The policy at issue provided

15   basic property and liability coverage to the sole proprietor and owner of the business.  *Id.* at 805.

16   The court evaluated the claim for coverage under the "professional services" "in light of all the

17   relevant circumstances in which that claim arises, including but not limited to, the term's

18   commonly understood meaning, the type and cost of the policy, and the nature of the enterprise."

19   *Id.* at 806.  The court held that in the context of a cosmetics business, ear piercing "was a

20   'professional' service both in the sense that it constituted an aspect of the cosmetics sales

21   professional and that it was done for and in anticipation of some form of financial gain."  *Id.* at

22   809.  "Professional services" are not limited to learned professions but instead are generally

23   activities "done for remuneration as distinguished from a mere pastime."  *Id.* at 807; *see also,*

24   *Amex Assurance Co v. Allstate Ins.*, 112 Cal.App.4th 1246, 1252, 5 Cal. Rptr. 3d 744 (2004)

25   (coverage excluded under professional services exclusion when a plumber with homeowner's

26   insurance allegedly improperly installed a water heater at his friends' house that caused a fire).

{JDA770604.DOC;1\00335.001620\ }
SCOTTSDALE INSURANCE COMPANY'S MOTION FOR
SUMMARY JUDGMENT - 18

OGDEN MURPHY WALLACE, P.L.L.C.
1601 Fifth Avenue, Suite 2100
Seattle, Washington 98101-1686
Tel: 206.447.7000/Fax: 206.447.0215

1    The fact that the Policy is a landlord lessor's policy and that its premiums are consistent

2    with that type of policy, rather than a general liability policy, support the application of the

3    professional services exclusion. *See* §V(A)(2) *supra*; *see also Hollingsworth*, 208 Cal.App.3d at

4    808.    The "relatively low premium also underscores the limited nature of the coverage and

5    dispels any reasonable expectation that it would extend to the type of injury suffered here."

6    *Hollingsworth*, 208 Cal.App.3d at 808.    Mr. Burns had previously looked into obtaining

7    insurance for Painless Steel and concluded that it was too costly.    Thus, he "should have

8    understood that the premium charged reflected a reasonable perception that [his] normal business

9    activities did not include any potentially injurious procedure." *Id.* at 810.    In fact, Mr. Burns

10    expressly informed Ms. Filosa that Painless Steel did not buy insurance.    (Allen Decl. Ex. 16).

11    Moreover, the Policy clearly contemplates insuring Mr. Burns as an apartment owner, not as the

12    owner of a tattoo and piercing parlor - in fact, Scottsdale was never told about Painless Steel

13    from Mr. Burns.    *See* §C *supra*.    Like in *Hollingsworth*, the injury to Ms. Filosa "did not arise

14    from any deficiency in the premises, such as a slippery floor or unsafe fixture, but from a

15    separate and distinct service..."    *Hollingsworth*, 208 Cal.App.3d at 808.    The Professional

16    Services Exclusion plainly, clearly, and unambiguously excludes coverage for the piercing

17    services, and by extension, for Ms. Filosa's allegations.    Simply put, the court "may not rewrite

18    the insurance contract or force a conclusion to exact liability where none was contemplated." *Id.*

19    Finally, in *Harris v. Fireman's Fund Indem. Co.*, 42 Wn.2d 655, 257 P.2d 221 (1953),

20    the Washington Supreme Court held that under a professional services exclusion in an "Owners',

21    Landlords' and Tenants' public liability policy" issued to a osteopathic physician, coverage was

22    not provided when a patient who was injured when the treatment table collapsed. *Harris*, 42

23    Wn.2d at 658-59.    Aside from the plain language of the exclusion, the denial of coverage was

24    further supported because the policy covered "ordinary risks incidents [sic] to the occupancy of a

25    commercial building" and the premium charged was consistent with a policy covering the

26    building not its professional operations. *Id.* at 665; *Cf. Aetna Ins. Co. v. Kent*, 85 Wn.2d 942,

1   947, 540 P.2d 1383 (1975) (holding that "the gross disparity in premium costs is clear evidence"

2   that the policies "were not intended to provide the same coverage but rather were intended to

3   provide mutually exclusive coverage.").

4        Thus, under both *Hollingsworth* and Washington law supporting it, body piercing is a

5   professional service excluded under the Policy.  Coverage for the Burnses and Painless Steel is

6   barred entirely under this exclusion.

     **B.**     **Because There is no Coverage Under the Policy, Scottsdale does not have a**
7                **Duty to Indemnify its Insured.**

8        Scottsdale neither had a duty to defend its insured, nor to indemnify it, because the Policy

9   does not provide coverage.  "The duty to indemnify hinges on the insured's actual liability to the

10  claimant and actual coverage under the policy." *Hayden*, 141 Wn.2d at 64.  As more fully

11  explained above, Scottsdale had no duty to defend or indemnify because its policy only covered

12  risks associated with the premises, and not Painless Steel or the Burnses as related to Painless

13  Steel.  *See* §V(A) *supra*.  Had Scottsdale intended to insure Painless Steel, it may have elected to

14  not offer insurance, or to charge much higher premiums that one might expect for a high risk

15  business such as a piercing and tattoo parlor.  *See* §V(A)(2)(b) *supra*.  Moreover, the bacteria

16  and professional services exclusions barred coverage under the Policy. *See* § V(A)(2) *supra*.

     **C.**     **Scottsdale did not act in Bad Faith.**
17

18             1.    **Scottsdale promptly denied Mr. Burns's tenders and did not violate**
19                  **WAC 284-30-330.**

20       Private counsel for Painless Steel and the Burnses made separate tenders to Scottsdale,

21  each one of which was responded to promptly.  *See* § II(G) *supra*.  Scottsdale was required to

22  "adopt and implement reasonable standards for the prompt investigation" of a claim.  *See* WAC

23  284-30-330(3).  For each of the tenders, Scottsdale promptly investigated the claims and issued

24  its denials with reasons for the denial.  *See* § II(G) *supra*.  The WACs further require that

25  Scottsdale had to investigate a claim "within thirty days after notification" of the claim "unless

26  such investigation cannot reasonably be completed within such time."  *See* WAC 284-30-370.

1  On each of the tenders, Scottsdale responded to the tender in less than 30 days and met its

2  obligations under WAC 284-30-370.  *See* § II(G) *supra*.[6]

3          2.      Scottsdale acted honestly and in good faith in denying Mr. Burns's tender
                    when it reasonably concluded that no coverage existed for Painless Steel
4                   under the Policy.

5          The  undisputed  facts  show  that  Scottsdale  did  not  misrepresent  pertinent  facts  or

6  insurance policy provisions.  *See* WAC 284-30-330(1).  Courts look at the "reasonableness of the

7  insurer's actions in light of all the facts and circumstances of the case."  *Shields v. Enterprise*

8  *Leasing Co.*, 139 Wn. App. 664, 676, 161 P.3d 1068 (2007).  Scottsdale gave reasons for each of

9  its denials.  (Dvorak Decl. Exs. 3, 5, 7, 9, 12).  It reasonably investigated the claims before

10 denying them.  *See* WAC 284-30-330(4).  By promptly responding to each tender and providing

11 reasons for its denials, Scottsdale acted reasonably and complied with Washington regulations.

12 *See* § II(G) *supra*.

13         Moreover, "[i]n order to establish bad faith, an insured is required to show the breach was

14 unreasonable, frivolous, or unfounded."  *Kirk v. Mt. Airy Ins. Co.*, 134 Wn.2d 558, 560, 951 P.2d

15 1124 (1998); *see also St. Paul Fire & Marine Ins. Co. v. Onvia, Inc.*, 165 Wn.2d 122, 130, 196

16 P.3d 664 (2008).   While Scottsdale vigorously maintains that the Policy does not provide

17 coverage, even if it is found to provide coverage, the mere fact that Scottsdale denied the claims

18 does not show that Scottsdale acted in bad faith.  Insurers "are going to make some mistakes."

19 *Coventry Assoc. v. Amer. States Ins. Co.*, 136 Wn.2d 269, 280, 961 P.2d 933 (1998).  "As long as

20 the insurance company acts with honesty, bases its decision on adequate information, and does

21 not overemphasize its own interests, an insured is not entitled to base a bad faith or CPA claim

22 against  its  insurer  on  the  basis  of  a  *good*  faith  mistake."  *Id.*  (emphasis in original).   As

23 explained herein, Scottsdale's denials were reasonable based on the Policy language and are

24 supported by legal authority.  Mr. Burns admitted that he did not buy insurance for Painless Steel

25 _____

    [6] Scottsdale also timely responded to Ms. Filosa's October 26, 2007 policy limits demand on December 7, 2007.
26 (Dvorak Decl. Exs. 6-7).

{JDA770604.DOC;1\00335.001620\ }
SCOTTSDALE INSURANCE COMPANY'S MOTION FOR
SUMMARY JUDGMENT - 21

OGDEN MURPHY WALLACE, P.L.L.C.
1601 Fifth Avenue, Suite 2100
Seattle, Washington 98101-1686
Tel: 206.447.7000/Fax: 206.447.0215

1   and knew that the Policy did not cover Painless Steel's operations.   *See* § II(C) *supra.*

2   Mr. Burns's attorney told him that he doubted Ms. Filosa would "take on Scottsdale as its

3   position that it owes no duty to defend this lawsuit is pretty sound." (Allen Decl. Ex. 19).   Bad

4   faith will not be "found where a denial of coverage or a failure to provide a defense is based

5   upon a reasonable interpretation of the insurance policy." *Kirk*, 134 Wn.2d at 560.   Without a

6   showing of bad faith, "[t]he failure to defend…does not constitute bad faith, trigger a

7   presumption of harm, or allow coverage by estoppel." *Id.* at 560-61.   Alleged claims which "are

8   clearly not covered by the policy relieve the insurer of its duty." *Id.* at 561.   Scottsdale evaluated

9   the Policy, came to a reasonable conclusion that it did not provide coverage for Ms. Filosa's

10   allegations, and promptly notified its insured.   *See* § II(G) *supra.*

11   **D.   Scottsdale did not Violate the Washington Consumer Protection Act.**

12   Ms. Filosa can prove a Consumer Protection Act ("CPA") violation one of two ways,

13   either (1)  allege the five elements required under *Hangman Ridge;*[7] or, (2) show that "the

14   alleged act constitutes a *per se* unfair trade practice.[8]  *See Hangman Ridge Training Stables, Inc.*

15   *v. Safeco Title Ins. Co.,* 105 Wn.2d 778, 780, 786, 719 P.2d 531 (1986).  As discussed above,

16   Scottsdale did not violate the WACs or any statutes, therefore, Ms. Filosa cannot claim a *per se*

17   violation of the CPA.  *See Rizzuti v. Basin Travel Svc. of Othello, Inc.,* 125 Wn. App. 602,

18   621-22, 105 P.3d 1012 (2005) (plaintiff could not show violations of the WACs as related to

19   insurance, therefore, there was no CPA violation).

20   [7] To prevail in a private action under the Washington Consumer Protection Act ("CPA"), a plaintiff must allege and
21   prove "five distinct elements: (1) an unfair or deceptive act; (2) occurring in trade or commerce; (3) public interest
     impact; (4) injury to plaintiff in his or her business or property; and (5) causation." *Hangman Ridge Training*
22   *Stables, Inc. v. Safeco Title Ins. Co.,* 105 Wn.2d 778, 780, 719 P.2d 531 (1986); RCW 19.86.020.  A lack of proof
     on any one element defeats a CPA claim.  *Id.* at 795.  "Whether a particular action gives rise to a violation of the
     CPA is reviewable as a question of law." *Sign-O-Lite Signs, Inc. v. DeLaurenti Florists, Inc.,* 64 Wn. App. 553,
23   560, 825 P.2d 714 (1992).

24   [8] To establish a *per se* violation, Plaintiff must allege and prove: "(1) the existence of a pertinent statute; (2) its
25   violation; (3) that such violation was the proximate cause of damages sustained; and (4) that they were within the
     class of people the statute sought to protect." *Fidelity Mortgage Corp. v. Seattle Times Co.,* 131 Wn. App. 462, 471,
     128 P.3d 621 (2005).  While violations of the WACs regarding insurance constitute a per se unfair practice, there
26   were no such violations. *See Rizzuti,* 125 Wn. App. at 621.

OGDEN MURPHY WALLACE, P.L.L.C.
1601 Fifth Avenue, Suite 2100
Seattle, Washington 98101-1686
Tel: 206.447.7000/Fax: 206.447.0215

1    Thus, Ms. Filosa must meet the five-factor *Hangman Ridge* test to establish a CPA

2    violation.  She cannot meet these criteria because Scottsdale did not engage in any unfair or

3    deceptive practices when it fairly interpreted the Policy to not provide coverage.  "A reasonable

4    basis for denial of an insured's claim constitutes a complete defense to any claim that the insurer

5    acted in bad faith or in violation of the Consumer Protection Act."  *Shields*, 139 Wn. App. at 676

6    (internal quotations and citations omitted).  "[A]cts performed in good faith under an arguable

7    interpretation of existing law do not constitute unfair conduct violative of the consumer

8    protection law."  *Id* (internal quotations and citations omitted); *see also Ins. Co. of the State of*

9    *Penn. v. Highlands Ins. Co.*, 59 Wn. App. 782, 786-87, 801 P.2d 284 (1990) ("[n]either denial of

10   coverage because of a debatable coverage question nor delay, unaccompanied by an unfounded

11   or frivolous reason, constitutes bad faith.").  As evidenced by the arguments and authority

12   asserted herein, Scottsdale acted in good faith by denying its insured's tender based on the plain

13   language of the Policy and established legal precedent.

14   Moreover, Ms. Filosa's CPA claims are void because she made material

15   misrepresentations in the process of her action.  (Allen Decl. Ex. 26).  In *Kim v. Allstate*

16   *Insurance Co, Inc.*, 2009 WL 4043373, Slip Op. No. 37256-8II, (Wn. Ct. App. Div. II, Nov. 24,

17   2009), the Washington Court of Appeals held that an insurer could not have acted in bad faith or

18   in violation of the CPA when the insured "knowingly and intentionally misrepresented" her

19   ability to work after her accident and the nature and extent of her injuries.  *Id.* at *10 (granting

20   summary judgment to insurance company when the misrepresentations were material to

21   plaintiff's claims).  Ms. Filosa, as an assignee of Painless Steel and the Burnses, has made

22   numerous misrepresentations throughout this process, including that (1) she procured the first

23   reasonableness determination by making knowing misrepresentations regarding the sole

24   evidence of proximate cause; (2) she represented to the Court that she would not pursue the

25   Burnses in their personal capacities and would not recover against their personal assets, but has

26   now changed her position (Allen Decl., Exs. 20 at 2-3, Ex. 21 at ¶ 3, Ex. 23 at ¶ 1.3); and, (3) she

{JDA770604.DOC;1\00335.001620\ }
SCOTTSDALE INSURANCE COMPANY'S MOTION FOR
SUMMARY JUDGMENT - 23

OGDEN MURPHY WALLACE, P.L.L.C.
1601 Fifth Avenue, Suite 2100
Seattle, Washington 98101-1686
Tel: 206.447.7000/Fax: 206.447.0215

1   has changed her theory of how the labret became contaminated - first alleging that it was

2   "contaminated" and changing the fault to an "ungloved hand" theory, after her expert physician

3   debunked her initial theory of infection.[9]    Therefore, because Ms. Filosa has made material

4   misrepresentations during this process, any bad faith or CPA violation against Scottsdale is

5   negated.

6                             **VI.**    **CONCLUSION**

7         Scottsdale  should  not  now  be  responsible  for  the  defense  and/or  indemnity  of

8   Ms. Filosa's claims when the Policy simply does not cover them.   By the insured's own

9   admission, the Policy was never intended to cover Painless Steel, or its operations.   Moreover,

10   Scottsdale  acted  with  good  faith  and  was  timely  in  responding  to  its  insured's  tenders  and

11   requests.  For the aforementioned reasons, Scottsdale Insurance Company respectfully asks the

12   Court  to  grant  Summary  Judgment  in  its  favor  as  to  Ms. Filosa's  claims  as  an  assignee  of

13   Painless Steel and the Burnses for (1) violations of the Consumer Protection Act, RCW 19.86 *et.*

14   *seq.*;  (2)  violations  of  RCW  48.01.030;  and  (3)  violations  of  WAC  284-30-330,  thereby

15   dismissing  with  prejudice  Plaintiff's  suit  against  Scottsdale  Insurance  Company,  as  to  these

16   claims.  A Proposed Order is attached hereto.

17         DATED this 9th day of March, 2010.

18                         OGDEN MURPHY WALLACE, P.L.L.C.

19

20                 By     /s Jaime Allen

21                         Geoff J. M. Bridgman, WSBA #25242

                              Jaime Drozd Allen, WSBA #35742

22                         Attorneys for Scottsdale Insurance Company

23

24

25

26

---

[9] There is not a single reference to an ungloved hand in the Second Amended Complaint, Settlement Agreement, written discovery, witness disclosures, or expert opinions. (*Id.* Ex. 23, Ex. 24 at 22:24-23:4, Ex. 25).

{JDA770604.DOC;1\00335.001620\ }
SCOTTSDALE INSURANCE COMPANY'S MOTION FOR
SUMMARY JUDGMENT - 24

OGDEN MURPHY WALLACE, P.L.L.C.
1601 Fifth Avenue, Suite 2100
Seattle, Washington 98101-1686
Tel: 206.447.7000/Fax: 206.447.0215

1

## CERTIFICATE OF SERVICE

2    I hereby certify that on March 9, 2010 I electronically filed the foregoing with the Clerk of the
     Court using the CM/ECF system which will send notification of such filing to the following:

3

4    William Barker                                    __X__        CM/ECF
     Sonnenschein Nath & Rosenthal, LLP                _____      Facsimile
     7800 Sears Tower                                  _____      U.S. Mail
5    233 South Wacker Drive                            _____      Messenger
     Chicago, IL  60606-6404

6

7    David B. Huss                                     __X__        CM/ECF
     Law Office of David B. Huss                       _____      Facsimile
     21907 64th Avenue West                            _____      U.S. Mail
8    Suite 370                                         _____      Messenger
     Mountlake Terrace, Washington  98043

9

     Dylan E. Jackson                                  __X__        CM/ECF
10   Wilson Smith Cochran Dickerson                    _____      Facsimile
     1215 Fourth Avenue                                _____      U.S. Mail
11   Suite 1700                                        _____      Messenger
     Seattle, Washington  98161

12

13   Ray W. Kahler                                     __X__        CM/ECF
     Strittmatter Kessler Whelan Coluccio              _____      Facsimile
     200 Second Avenue West                            _____      U.S. Mail
14   Seattle, WA 98119-4204                            _____      Messenger

15   Brad Moore                                        __X__        CM/ECF
     Strittmatter Kessler Whelan Coluccio              _____      Facsimile
16   200 Second Avenue West                            _____      U.S. Mail
     Seattle, Washington  98119                        _____      Messenger

17

18

19   DATED this 9th day of March 2010, at Seattle, Washington.

20

                                    ___s/ Jaime D. Allen_____
21                                     Jaime D. Allen, WSBA #35742

22

23

24

25

26

{JDA770604.DOC;1\00335.001620\ }
SCOTTSDALE INSURANCE COMPANY'S MOTION FOR
SUMMARY JUDGMENT - 25

OGDEN MURPHY WALLACE, P.L.L.C.
1601 Fifth Avenue, Suite 2100
Seattle, Washington 98101-1686
Tel: 206.447.7000/Fax: 206.447.0215