1
2
3
4
5
6
7
8

UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF WASHINGTON
AT SEATTLE

9

JAMES LEE BURNS, *et al.*,

10          Plaintiffs,

11      v.

Case No.  C08-1136RSL

12   SCOTTSDALE INSURANCE COMPANY,

ORDER REGARDING CROSS
MOTIONS FOR PARTIAL
SUMMARY JUDGMENT

13          Defendant.

14
15
16

## I.  INTRODUCTION

17      This matter comes before the Court on a motion for partial summary judgment filed by

18  defendant Scottsdale Insurance Company ("Scottsdale") and on a cross motion for partial

19  summary judgment filed by plaintiff Lacey Filosa ("plaintiff") regarding the applicability of

20  insurance coverage.  Plaintiff alleges that Scottsdale wrongfully denied insurance coverage,

21  acted in bad faith by failing to provide coverage or defend in the underlying state court litigation,

22  and violated Washington's Insurance Fair Conduct Act ("IFCA") and Consumer Protection Act

23  ("CPA").  The cross motions address all claims except the IFCA claim.

24      At the parties' request, the Court heard oral argument in this matter on July 20, 2010.  For

25  the reasons set forth below, the Court grants defendant's motion and denies plaintiff's motion.

26
27
28

ORDER REGARDING CROSS MOTIONS
FOR PARTIAL SUMMARY JUDGMENT - 1

## II. DISCUSSION

**A.    Background Facts.**

Plaintiff had her tongue pierced by an employee of Painless Steel – Everett LLC ("Painless Steel") in March 2006.  Approximately two weeks later, after experiencing pain in her mouth, she went to the emergency room, where she became gravely ill.  Medical personnel determined that she suffered from a life threatening infection of "flesh eating" bacteria. Although Filosa subsequently recovered, she continues to have significant scarring.  Her treating physician, Dr. James Erhardt, has opined that the bacteria in her own saliva entered her body through the hole in her tongue, causing a serious infection.  Erhardt Dep. at p. 22.

In June 2007, Filosa brought suit in Snohomish County Superior Court against Painless Steel alleging that she was seriously injured after having her tongue pierced.  Ultimately, Filosa settled with Painless Steel and its owners, James Lee Burns and Mandy Burns, for $3 million. The Honorable Ronald Castleberry, Snohomish County Superior Court Judge, held a reasonableness hearing and found that the settlement was reasonable.  Plaintiff's Motion, Ex. 15. As part of the settlement, Painless Steel and the Burnses assigned their rights to Filosa under an insurance policy issued by Scottsdale.  Filosa now sues Scottsdale as the assignee of that policy. In January 2009, the parties stipulated to the dismissal without prejudice of the claims of the Burnses and Painless Steel, leaving Filosa as the only remaining plaintiff in this case.

**1.    The Policy Language.**

In November 2001, Mr. Burns purchased property in Everett, Washington and began leasing space to Painless Steel and other tenants.  Subsequently, Mr. Burns obtained a commercial general liability insurance policy from Scottsdale for the period of June 9, 2005 to June 9, 2006, which included the time period encompassing Filosa's piercing.  The policy listed, as "Named Insured," Lee Burns, who the parties concede is plaintiff James Lee Burns, as an "Individual."  Declaration of Jaime Allen, (Dkt. #66) ("Allen Decl."), Ex. 6 (hereinafter, the "policy") at p. 00006, p. 00012.  "Property Owner" is listed as the "Business Description."  Id. at

ORDER REGARDING CROSS MOTIONS
FOR PARTIAL SUMMARY JUDGMENT - 2

p. 00006.  The policy includes commercial general liability coverage and commercial property

coverage.  Id.  The policy describes the "Class Description" as "Apartment Buildings" and

"Buildings or Premises – Bank and Office Mercantile or Manufacturing (Lessor's Risk Only)."

Id. at p. 00013.

The policy includes a section titled, "Who Is An Insured" that states, "If you are

designated in the Declarations as: An individual, you and your spouse are insureds, but only with

respect to the conduct of a business of which you are the sole owner."  Policy at p. 00021.  The

same section also contains the following language: "No person or organization is an insured with

respect to the conduct of any current or past partnership, joint venture or limited liability

company that is not shown as a Named Insured in the Declaration."  Id. at p. 00022.  The policy

applies to "bodily injury" arising out of the "ownership, maintenance, or use of the premises . . .

and operations necessary or incidental to those premises."  Id. at p. 00032.  The Declarations

Page of the policy includes coverage for "Products/Completed Operations;" "Your Product"

includes the "providing or failure to provide warnings or instructions."  Id. at p. 00024.

Injury "due to the rendering or failure to render any professional service" is excluded.  Id.

at p. 00030.  The policy also contains an exclusion related to fungi or bacteria:

> Bodily injury . . . which would not have occurred, in whole or in part, but for the actual,
> alleged or threatened inhalation of, ingestion of, or presence of, any 'fungi' or bacteria on
> or within a building or structure, including its contents, regardless of whether any other
> cause, event, material or product contributed concurrently or in any sequence to such
> injury or damage.

Id. at p. 00049-50.  The exclusion contains an exception: it does not apply to "fungi" or bacteria

"that are . . . on, or are contained in, a good or product intended for consumption."  Id. at

p. 00050.

## 2.    Underlying Litigation and Claims Handling.

After Painless Steel was sued in the underlying litigation, its counsel tendered the claim

to Scottsdale.  Scottsdale received the documents on June 29, 2007, and sent its response on July

11, 2007.  The letter denied coverage because the policy did not insure Painless Steel.

ORDER REGARDING CROSS MOTIONS
FOR PARTIAL SUMMARY JUDGMENT - 3

1    Declaration of Karen Dvorak, (Dkt. #67) ("Dvorak Decl."), Ex. 3.

2         In July 2007, Filosa filed an amended complaint naming Painless Steel and "John Does,"

3    identified as agents or employees of Painless Steel – Everett LLC.  Painless Steel's counsel re-

4    tendered the claim to Scottsdale.  Scottsdale denied the claim on September 12, 2007, stating

5    that its coverage position remained unchanged.  Dvorak Decl., Ex. 5.  No additional reasons for

6    the denial were given beyond those stated in the original denial letter.

7         In October 2007, Filosa amended her complaint to add the Burnses as defendants.  The

8    second amended complaint alleged that Mr. Burns failed to establish and implement procedures

9    to prevent infection, failed to adequately warn her of the risk of infection, and failed to properly

10   train the employee who conducted the piercing.  In her motion to amend, Filosa explicitly

11   disavowed any intent to sue the Burnses in their personal capacities: "Painless Steel Everett LLC

12   purposely operates bare of any insurance, so there is no liability insurance coverage for the

13   business. . . .  Therefore, I have added James Lee Burns and his spouse in their capacity as the

14   sole owners of Painless Steel Everett LLC, not as individuals subject to personal liability."

15   Allen Decl., Ex. 20 at pp. 2-3; id., Ex. 21 at ¶ 3.  The Second Amended Complaint filed in the

16   underlying litigation added the Burnses "as sole owners of Painless Steel Everett LLC."  Id., Ex.

17   23 at ¶ 1.3.  The claim was again tendered to Scottsdale, which denied the claim within one day

18   of receiving it.  Dvorak Decl., Ex. 7.  Counsel again tendered the claim to Scottsdale after the

19   state court granted Filosa's motion to amend her complaint.  Within seven days of receiving the

20   letter, Scottsdale denied the claim for the fourth time, stating that "no person is an insured with

21   respect to the conduct of any . . . limited liability company that is not shown as a Named Insured

22   in the Declarations."  Dvorak Decl., Ex. 9.  Scottsdale reiterated its position in a letter from its

23   outside counsel sent in December 2007.  Id., Ex. 12.

24   **B.    Summary Judgment Standard.**

25        Summary judgment is appropriate when, viewing the facts in the light most favorable to

26   the nonmoving party, the records show that "there is no genuine issue as to any material fact and

27

28   ORDER REGARDING CROSS MOTIONS
     FOR PARTIAL SUMMARY JUDGMENT - 4

that the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(c).  Once the

moving party has satisfied its burden, it is entitled to summary judgment if the non-moving party

fails to designate, by affidavits, depositions, answers to interrogatories, or admissions on file,

"specific facts showing that there is a genuine issue for trial."  Celotex Corp. v. Catrett, 477 U.S.

317, 324 (1986).

All reasonable inferences supported by the evidence are to be drawn in favor of the

nonmoving party.  See Villiarimo v. Aloha Island Air, Inc., 281 F.3d 1054, 1061 (9th Cir. 2002).

"[I]f a rational trier of fact might resolve the issues in favor of the nonmoving party, summary

judgment must be denied."  T.W. Elec. Serv., Inc. v. Pacific Elec. Contractors Ass'n, 809 F.2d

626, 631 (9th Cir. 1987).  "The mere existence of a scintilla of evidence in support of the

non-moving party's position is not sufficient."  Triton Energy Corp. v. Square D Co., 68 F.3d

1216, 1221 (9th Cir. 1995).  "[S]ummary judgment should be granted where the nonmoving

party fails to offer evidence from which a reasonable jury could return a verdict in its favor."  Id.

at 1221.

## C.   Analysis.

### 1.   Coverage and Duty to Defend.

Because this is a diversity case, the Court applies Washington's choice of law rules.  The

parties agree and the Court finds that Washington law applies.

> In Washington, insurance policies are construed as contracts.  An insurance policy is
> construed as a whole, with the policy being given a fair, reasonable, and sensible
> construction as would be given to the contract by the average person purchasing
> insurance.  If the language is clear and unambiguous, the court must enforce it as written
> and may not modify it or create ambiguity where none exists.  If the clause is ambiguous,
> however, extrinsic evidence of intent of the parties may be relied upon to resolve the
> ambiguity.  Any ambiguities remaining after examining applicable extrinsic evidence are
> resolved against the drafter-insurer and in favor of the insured.  A clause is ambiguous
> when, on its face, it is fairly susceptible to two different interpretations, both of which are
> reasonable.

Panorama Vill. Condo. v. Allstate Ins. Co., 144 Wn.2d 130, 137 (2001) (quoting Weyerhaeuser

Co. v. Commercial Union Ins. Co., 142 Wn.2d 654, 665-66 (2000)) (internal quotations

omitted).

1    The duty to defend is broader than the duty to indemnify.  See, e.g., Truck Ins. Exchange

2  v. Vanport Homes, Inc., 147 Wn.2d 751, 760 (2002).  The duty to defend "arises when a

3  complaint against the insured, construed liberally, alleges facts which could, if proven, impose

4  liability upon the insured within the policy's coverage."  Id. (internal citation and quotation

5  omitted).  The insurer is relieved of the duty to defend only if the claim alleged is clearly not

6  covered by the policy.  Kirk v. Mt. Airy Ins. Co., 134 Wn.2d 558, 561 (1998) (internal citation

7  omitted).  If the complaint is ambiguous, it will be liberally construed in favor of triggering the

8  insurer's duty to defend.  R.A. Hanson Co. v. Aetna Ins. Co., 26 Wn. App. 290, 295 (1980).  The

9  Court therefore compares the allegations in the complaint to the policy language to determine if

10  the complaint "sets forth facts which, if proved, would trigger coverage."  Truck Ins. Exchange,

11  147 Wn.2d at 762.

12    "The insured bears the burden of showing that coverage exists; the insurer that an

13  exclusion applies."  Mutual of Enumclaw Ins. Co. v. T&G Constr., Inc., 165 Wn.2d 255, 268

14  (2008).  Under Washington law, the Court must liberally construe the policy in favor of finding

15  coverage.  See, e.g., Bordeaux, Inc. v. Am. Safety Ins. Co., 145 Wn. App. 687, 694 (2008).

16  Coverage exclusions "are contrary to the fundamental protective purpose of insurance and will

17  not be extended beyond their clear and unequivocal meaning;" they are "strictly construed

18  against the insurer."  Stuart v. Am. States Ins. Co., 134 Wn.2d 814, 818-19 (1998).

19         **a.       No Duty to Defend.**

20    Because the duty to defend is broader than the duty to indemnify, the Court considers first

21  whether the duty to defend was triggered.  In this case, Scottsdale determined that it did not have

22  a duty to defend in part because Painless Steel was not a named insured, a fact that is

23  indisputable.  The only insured listed was Mr. Burns, an "individual."  In fact, prior to the

24  initiation of the underlying litigation, Scottsdale was unaware that Mr. Burns owned Painless

25  Steel.  Dvorak Decl. at ¶ 5.

26    Plaintiff argues that the duty to defend was triggered because the policy insured Mr.

27

28  ORDER REGARDING CROSS MOTIONS
    FOR PARTIAL SUMMARY JUDGMENT - 6

Burns "with respect to the conduct of a business of which you are the sole owner," Policy at p. 00021, and in Filosa's second amended complaint, she alleged that the Burnses were the "sole owners" of Painless Steel.  However, the second amended complaint did not allege that Mr. Burns, the only named insured, was the sole, as in only, owner.  Instead, the second amended complaint twice identified the Burnses as "sole owners" of Painless Steel.  Although plaintiff contends that a factual investigation would have shown that Mr. Burns was in fact the only owner, Scottsdale was not required to investigate when the allegation was clear.  In addition, the Burnses' own attorney confirmed that both of them owned Painless Steel.  Dvorak Dep. at pp. 21-22.

Furthermore, the same section limits coverage: "No person or organization is an insured with respect to the conduct of any current or past partnership, joint venture or limited liability company that is not shown as a Named Insured in the Declaration."  Id. at p. 00022 (the "LLC exclusion").  The meaning of that sentence is clear and unambiguous.  In an attempt to show an ambiguity, plaintiff proposes a tortured reading of the provision: "No person [James Lee Burns] or organization is an insured with respect to the conduct of any current or part partnership, joint venture or limited liability company that is not shown as a Named Insured [James Lee Burns] in the Declaration."  Plaintiff's Motion at p. 11.  Plaintiff's rewriting of that language is inconsistent with its plain meaning and with the rule that contracts should be given an ordinary, reasonable meaning.

Plaintiff also contends that the LLC exclusion is inapplicable because an endorsement provided that the "new entities" language set forth in subsection (3) explicitly "does not apply." Policy at p. 00031 (titled, "Exclusion–New Entities," and reading "Paragraph 3. of Section II – Who Is an Insured does not apply").  Plaintiff's contention therefore requires an examination of whether the LLC exclusion is part of subsection (3).  Plaintiff notes that the LLC exclusion is under subsection (3) and is not separately numbered.  However, the endorsement is titled "New Entities" but the LLC exclusion does not refer to new entities and applies more broadly.

ORDER REGARDING CROSS MOTIONS
FOR PARTIAL SUMMARY JUDGMENT - 7

1   Moreover, all of the other paragraphs appearing below subsection (3) are lettered (a., b., c.) and

2   the LLC exclusion is not.  In addition, it is not indented to the right like all of the other text that

3   appears below subsection (3).  Rather, the text of the LLC exclusion is flush to the left margin,

4   which shows that it applies to the entire section.  Because of its placement in that section and

5   lack of numbering or indentation, an average person purchasing insurance would understand that

6   the provision applied to the entire section.[1]  That conclusion is also supported by the placement

7   and indentation of other language in the policy.  See, e.g., Policy at p. 00014.  In sum, the

8   Burnses were not insured with respect to the conduct of Painless Steel.

9        Even if Painless Steel's conduct is not covered, plaintiff argues that the second amended

10   complaint included allegations that could subject Mr. Burns to personal liability.  She argues that

11   under that theory, Scottsdale owed a duty to defend.  However, in the underlying litigation,

12   Filosa explicitly and unequivocally stated that she was not suing the Burnses "as individuals

13   subject to personal liability."  Allen Decl., Ex. 20.  Filosa is bound by that representation.  See,

14   e.g., Ashmore v. Estate of Duff, 165 Wn.2d 948, 951 (2009) (explaining that judicial estoppel

15   "prevents a party from asserting one position in a judicial proceeding and later taking an

16   inconsistent position to gain an advantage.").  Although plaintiff now contends that her prior

17   statement is irrelevant because the duty to defend must be determined solely based on the

18   allegations in the complaint, there are two exceptions to that rule: (1) "[i]f coverage is not clear

19   from the face of the complaint but may exist, the insurer must investigate the claim and give the

20   insured the benefit of the doubt in determining whether the insurer has an obligation to defend,"

21   Truck Ins. Exchange, 147 Wn.2d at 761; and (2) facts outside the complaint may be considered

22   if "(a) the allegations [in the complaint] are in conflict with facts known to or readily

23   ascertainable by the insurer, or (b) the allegations of the complaint are ambiguous or

24   _____

25       [1] Plaintiff also contends that reading the LLC exclusion as urged by Scottsdale would
render the "who is insured" language of subsection 1(a) meaningless.  However, there are other

26   types of "businesses" besides partnerships, joint ventures, and LLCs, so the language would not
be meaningless.

27

28   ORDER REGARDING CROSS MOTIONS
FOR PARTIAL SUMMARY JUDGMENT - 8

inadequate." Id. (internal citations and quotation omitted).  Based on the exception for facts known to the insurer, Scottsdale was not required to ignore Filosa's clear representation to the court and defend against a claim she had explicitly disavowed.

Although not necessary to the conclusion, the Court also notes that extrinsic evidence supports the conclusion that the policy did not provide coverage.  Despite plaintiff's contention that the evidence is irrelevant, Washington courts have permitted such evidence "to show the situation of the parties and the circumstances under which a written instrument was executed, for the purpose of ascertaining the intention of the parties and properly construing the writing." Lynott v. Nat'l Union Fire Ins. Co., 123 Wn.2d 678, 683 (1987) (quoting Berg v. Hudesman, 115 Wn.2d 657, 669 (1990)).  In this case, Mr. Burns received a letter from his insurance broker quoting a price for the policy and explaining that it covers "just the liability associated with the building as the Lessor's Risk and GL associated with the rental of the 2 units as well as the building itself.  It doesn't contemplate any of the operations you may being run [sic] from that building."  Allen Decl., Ex. 7.  The failure to seek insurance for Painless Steel is consistent with Mr. Burns' intention to leave it bare of insurance.  Burns Dep. at pp. 32-33.

### b.    The Professional Services Exclusion Applies.

Even if the policy provided for coverage, the professional services exclusion applies. That exclusion excludes "any and all professional exposures."  Policy at p. 00030.  The policy does not define "professional service" or "professional exposure."  In the absence of such a definition, plaintiff argues that a dictionary definition should prevail, and cites Webster's Collegiate Dictionary (10th ed. 1995), which defines "professional" as "of, relating to, or characteristic of a profession."  In turn, it defines "profession" as "a. a calling requiring specialized knowledge and often long and intensive academic preparation; b. a principal calling, vocation, or employment; c. the whole body of persons engaged in a calling."  Despite plaintiff's claim to the contrary, that definition is broad enough to include tattooing services, which is a vocation and also a calling that requires specialized knowledge.  The employee who pierced

ORDER REGARDING CROSS MOTIONS
FOR PARTIAL SUMMARY JUDGMENT - 9

1  Filosa's tongue had undergone a one-year apprenticeship.  Doose Dep. at p. 15, 20-21.  The

2  organization that provided the training is called the "Alliance of Professional Tattoo Artists,"

3  which suggests that tattoo artists consider themselves professionals.[2]  Id. at pp. 13-14.

4  Furthermore, the term "professional" "generally signifies an activity done for remuneration as

5  distinguished from a mere pastime."  Hollingsworth v. Comm. Union Ins. Co., 208 Cal. App.3d

6  800, 807 (Cal. App. 1989).  In this case, the piercing was performed for remuneration.

7  Moreover, in *Hollingsworth*, the court found that ear piercing was a professional service

8  excluded by a professional services policy exclusion because the ear piercing was an aspect of

9  the profession and was performed in anticipation of financial gain.  The court explained that the

10  insured purchased coverage for "her interests in the property itself including continued

11  operations as well as coverage for injuries while on the property." Id. at 808.  The injury was

12  not as a result of "any deficiency in the premises, such as a slippery floor or unsafe fixture, but

13  from a separate and distinct service offered to benefit" the insured financially.  Id.  For those

14  reasons, the court in *Hollingsworth* concluded that the ear piercing was an excluded professional

15  service.  This case presents a very similar factual scenario, and the reasoning applies to this case

16  also.

17      Although plaintiff contends that the *Hollingsworth* reasoning is inconsistent with

18  Washington law, she has not shown that to be the case.  During oral argument, plaintiff's

19  counsel noted that defendant's coverage counsel relied on *Planet Earth Foundation v. Gulf*

20  *Underwriters Ins.*, 130 Wn. App. 1040, 2005 Wn. App. LEXIS 3093 (2005) in their opinion

21  letter reiterating the denial of coverage.  Dvorak Decl., Ex. 12.  The letter noted that in that case,

22

23

24      [2] Mr. Burns also repeatedly referred to the tattoo services as "professional" in nature.
Burns Dep. at p. 27 (referring to policies covering tattoo and piercing parlors as policies for

25  "professional services"); id. (explaining that when he considered purchasing insurance for
Painless Steel, he found "pretty much nothing that would cover us on a professional standing

26  that we could afford."); id. at 98 (explaining that he knew that the policy "would not cover
anything – any professional, so tattoo or piercing related stuff.").

27

28  ORDER REGARDING CROSS MOTIONS
FOR PARTIAL SUMMARY JUDGMENT - 10

the Court of Appeals explained that a professional services exclusion is not limited to "professional services" as defined by a Washington regulatory statute. Id. at p. 17. Plaintiff makes the same argument in this case, and it is untenable. Plaintiff also argues that the *Planet Earth* case, which is unpublished, undermines the applicability of the professional services exclusion because in that case, the Court of Appeals defined "professional service" as "one arising out of a vocation, calling, occupation, or employment involving specialized knowledge, labor, or skill, and the labor or skill involved is predominantly mental or intellectual, rather than physical or manual." Plaintiff contends that piercing and tattooing is not predominantly mental or intellectual. Regardless, as defendant's coverage counsel noted, the policy in this case broadly excludes "any and all professional exposures," which is broader than damages arising out of professional services. Plaintiff also relies on *American Best Food, Inc. v. Alea London, Ltd.*, __ Wn.2d __, 2010 WL 963993 Slip Op. 80753-1 (Wash. Mar. 18, 2010) for the proposition that an insurer breaches its duty to defend when it relies on a case from another jurisdiction when there is no controlling Washington precedent. The *American Best* holding, however, is not so broad. Rather, the court explained that the lack of any Washington case on point and contrary out of state authority created an uncertainty for the insurer, triggering the duty to defend. In this case, in contrast, there was no controlling Washington precedent, no contrary out of state authority, and a persuasive out of state case directly on point.

Plaintiff also argues that Filosa alleged an injury as a result of poor sanitation practices at Painless Steel, and that following basic sanitation practices is not a matter of professional services. However, the service cannot be separated from procedures and practices necessary and attendant to it, including inserting the metal piercing and related sanitation procedures. See, e.g, Hollingsworth, 208 Cal. App.3d at 810 (explaining that the service must be "viewed as a whole"); see also Harris v. Fireman's Fund Indemnity Co., 42 Wn.2d 655, 665 (1953) (holding that the professional services exclusion excluded coverage for plaintiff's injuries arising from a treatment table collapsing that occurred in the performance of professional services).

ORDER REGARDING CROSS MOTIONS
FOR PARTIAL SUMMARY JUDGMENT - 11

1    Finally, the policy coverage page did not include any premium amount for "professional

2 liability."  Policy at p. 0006.  Nor did Burns inform Scottsdale when Painless Steel began

3 operating on the premises.   Mr. Burns' failure to obtain professional liability insurance is

4 consistent with his statement that he did not insure Painless Steel because there was "pretty

5 much nothing that would cover [them] on a professional standing that [they] could afford."

6 Burns Dep at pp. 26-27.  Those facts further support the conclusion that the parties did not

7 intend to cover Painless Steel's operations.

8    Because the Court has found that the policy clearly did not provide coverage, and even if

9 it did, the professional services exclusion applied, it need not consider defendant's additional

10 argument that the bacteria exclusion applies.  Scottsdale correctly determined that no coverage

11 applied and it had no duty to defend.

12        **2.      Bad Faith and CPA Claims.**

13    Unlike typical bad faith and CPA claims, plaintiff is not contending that defendant

14 violated any specific WAC provision.[3]  Rather, plaintiff argues that defendant acted in bad faith

15 by refusing to defend Mr. Burns "based on an arguable, self-serving interpretation of its policy

16 that put its interests ahead of its insured."  Plaintiff's Opposition at p. 12.  Because the Court has

17 found that defendant did not breach its duty to defend, plaintiff's bad faith claim premised on the

18 same arguments fails for the same reasons.  Similarly, plaintiff's contention that defendant

19 violated the CPA by acting without reasonable justification is fatally undermined because

20 defendant acted consistently with the policy.  See, e.g., Shields v. Enter. Leasing Co., 139 Wn.

21 App. 664, 676 (2008) ("A reasonable basis for denial of an insured's claim constitutes a

22 complete defense to any claim that the insurer acted in bad faith or in violation of the Consumer

23 Protection Act.") (internal citation and quotation omitted).

24    Plaintiff argues that Scottsdale failed to consider alternate interpretations of the contract

25 _____

26    [3] Although plaintiff's initial complaint could be interpreted to allege that defendant
unreasonably delayed in responding to Mr. Burns' tenders, plaintiff has abandoned that claim.
27

28 ORDER REGARDING CROSS MOTIONS
FOR PARTIAL SUMMARY JUDGMENT - 12

that favored coverage, and failed to give the insured the benefit of the doubt.  However, there is

no evidence to support those contentions.  Plaintiff also contends that the Scottsdale employees

who denied the claim "made no effort to familiarize themselves with Washington law and had

not heard of the leading Washington case on the duty to defend at the time the decision was

made, *Woo v. Fireman's Fund*."  Plaintiff's Opposition at p. 22.  Although the state insurance

regulations contain specific requirements for claims handling, none requires insurance claims

adjusters to be conversant with the names of specific cases or to review such cases prior to

making coverage determinations.  In fact, defendant's Rule 30(b)(6) designee's testimony shows

that the company understood its legal obligations, including those related to the duty to defend.

Rommal Dep. at pp. 15, 16, 19, 64.  Therefore, plaintiff's claims for bad faith and violation of

the CPA fail as a matter of law.

### III.  CONCLUSION

For all of the foregoing reasons, the Court GRANTS defendant's motion for partial

summary judgment (Dkt. #65) and DENIES plaintiff's motion for partial summary judgment

(Dkt. #62).  The Court dismisses with prejudice plaintiff's claims for wrongful denial of

coverage, breach of the duty to defend, bad faith, and violation of the CPA.

DATED this 23rd day of July, 2010.

Robert S. Lasnik
United States District Judge